**UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA,

        Plaintiff,        CASE NO. 00-6360-CR-DIMITROULEAS

vs.

JOSE ALBERTO MENDEZ,

        Defendant.
_____/

## OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

COMES NOW the defendant, Jose Alberto Mendez, and files his objections to the Offense Level Computation of the Presentence Investigation Report (PSI), and says as follows:

The Presentence Investigation Report (PSI), page 14, reveals Mendez's role assessment, for which he is to be held accountable, as follows:

> Jose Alberto Mendez, a/k/a "Albertico,' was involved solely in the Cannon theft. According to the agent, Mendez was at the CI's warehouse on October 15, 1999 when Pablo Anaya arrived driving the stolen tractor and trailer with the stolen merchandise inside and the stolen goods were offloaded. The following day, October 16, 1999, he was seen by the agents going back to the CI's warehouse driving a truck, at which time he took merchandise from the CI's warehouse. Mendez drove to Miami where he delivered the merchandise to a residence in Miami where he, along with the others, was arrested. The loss amount as indicated above is $305,916, for which Mendez is held responsible. Neither an aggravating nor mitigating role is warranted for Mendez.

1

The most egregious profile which can be portrayed from Mendez's role assessment in this offense is that he was present when the merchandise was off-loaded at the warehouse, and the following day drove, as directed, a vehicle, carrying only a small portion of the merchandise to an address in Miami, Florida. The vehicle driven by Mendez was a small van.

This minimum role assessment warrants three (3) considerations by this Court:

1. Disallowing the two (2) level enhancement for "more than minimum planning" as computed in the PSI (¶ 46).

2. A four (4) level downward departure for Mendez's minimum participation in the offense to which he plead (¶ 48).

3. Offense level was extraordinarily magnified (¶ 45).

1. More Than Minimum Planning

In the case of *U.S. v. Tapia*, 59 F.3d 1137 (11 Cir.1995), wherein the defendant was convicted of obstruction of justice by retaliating against a witness, based on the jail cell beating of an incarcerated government informant, the Eleventh Circuit discussed whether the trial court erred in increasing the defendant's an additional two levels for "more than minimal planning". The Court discussed the parameters of "more than minimum planning":

> U.S.S.G. § 1B1.1(f) sets forth three circumstances under which more than minimal planning exists: (1) if the defendant undertook "more planning than is typical for commission of the offense in a simple form"; (2) if "significant affirmative steps were taken to conceal the offense"; or (3) "in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." The district court concluded that "Perez, by his telephone conversation with Ryan, effectuated more than minimal planning in the retaliation against the witness Connelly." We cannot agree.
>
> We review the district court's finding of "more than minimal

2

> planning" for clear error. See *United States v. Garcia*, 13 F.3d 1464,
> 1470 (11th Cir.), cert. denied, 512 U.S. 1226, 114 S.Ct. 2723, 129
> L.Ed.2d 847 (1994). This enhancement is "usually applied to
> sophisticated crimes or offenses requiring repeated acts over a period
> of time." *United States v. Cropper*, 42 F.3d 755, 758 (2d Cir.1994). In
> this case, Perez did not formulate a sophisticated plan or an elaborate
> scheme. There was no evidence, for example, that Perez took steps to
> have Connelly placed in the cell with him. Although Perez did place a
> phone call to ascertain that Connelly planned to testify against Ryan,
> the phone call was made immediately prior to the attack. The crime
> therefore did not involve more planning than typical for the
> commission of this offense. Further, Perez took no steps to conceal
> the crime from the jail officials and the crime did not involve
> repeated acts over a period of time. We therefore hold that the court
> clearly erred in concluding that Perez effectuated more than minimal
> planning in the retaliation against Connelly.

59 F.3d at 1144.

In its reasoning, the Court cited *United States v. Cropper*, wherein the Second Circuit held that to increase a defendant's offense level by two points when the offense involved "more than minimal planning", it is required "that **the defendant**: (1) engaged in more planning than the offense would require in its simple form; or (2) took significant steps to conseal the crime, excluding conduct that constitutes obstruction of justice." (Emphasis added.)

A review of the Eleventh Circuit cases, which have originated in the Florida Federal District Courts, evinces that the courts, as in *Tapia*, and consistent with *Cropper*, has looked to the conduct of the defendant to determine if he/she has been involved in more than minimal planning. *See U.S. v. Ward*, 222 F.3d 909 (11th Cir. 2000)(Enhancement of armed security guard's sentence for stealing bank money from armored car, based on finding of more than minimal planning, was supported by evidence that guard committed two thefts twenty days apart, and placed seal on money bag during second theft in attempt to conceal offense.); *U.S. v. Daniels*, 148 F.3d 1260 (1th

3

Cir.1998)(Defendant's embezzlement of funds from employee benefit plan and his false statements on loan applications warranted two-level enhancement of base offense level for "more than minimal planning"; embezzlement from health plan occurred over period of nearly five years, and represented "repeated acts over a period of time" that were not merely opportune, while false loan applications were significant affirmative steps taken to conceal two separate offenses.);*U.S. v. Bush*, 126 F.3d 1298 (11th Cir. 1997)(Defendant's embezzlement from credit union involved "more than minimal planning," as required for two-level enhancement under Sentencing Guidelines to apply; defendant embezzled money from credit union on three separate occasions, each involving false entries, and took affirmative steps to conceal embezzlement by stopping mail from being sent to customer whose savings she had used as collateral for fictitious loan.);*U.S. v. Garcia*, 13 F.3d 1464 (11th Cir.1994)(Evidence supported determination that defendant's role in incidents involving theft and sale of frozen seafood was more than minor, thus warranting increase in base offense level for offense involving more than minimal planning; conspirators engaged in repeated acts over period of time as they frequently searched for tractor trailers loaded with seafood, stole several tractor trailers, hid them in abandoned warehouse, and used defendant's truck to redistribute stolen seafood to defendant, who then fenced stolen merchandise.);*U.S. v. Mullins*, 996 F.2d 1170 (11th Cir. 1993)(Defendant convicted of unlawfully transporting stolen motor vehicles in interstate commerce engaged in more than minimal planning under Sentencing Guidelines; over period of 30 days defendant purchased three vehicles from three different dealerships, paying in full with three checks he knew were worthless, then transported vehicles across state lines and sold each vehicle as new in his dealership.);*U.S. v. Kramer*, 943 F.2d 1543 (11th Cir.1991)(Sentencing court's application of two-level increase in base level offense under guidelines provision authorizing enhancement for an

4

offense involving more than minimal planning was supported by the record; attempt to free prisoner involved six-month conspiracy, five participants, a helicopter, an airplane fitted with extra fuel tanks, car with a secret compartment for hiding, a safehouse, coded messages, and hundreds of thousands of dollars.); and *U.S. v. Scroggins*, 880 F.2d 1204 (11th Cir.1989)(Finding that postal theft defendant's thefts involved more than minimal planning, for sentencing purposes, was sufficiently supported by evidence that defendant had committed series of 19 postal thefts.) Herein, Mendez did no more than be present on the day the merchandise was unloaded and, on the second day, drive a van containing a portion of the merchandise. There simply is no evidence that Mendez planned any facet of this enterprise. He was merely a driver.

## 2. Downward Departure for Minimum Participation in the Offense

The same minimal conduct on part of Mendez, coupled with a lack of authority within the participants, as well as a lack of knowledge of the scope of the offense conduct/role of other participants, warrants granting Mendez a downward departure of four levels pursuant to USSG § 3B1.2. This section provides for a decrease of four levels if a defendant was a minimal participant in any criminal activity; and the Guidelines commentary defines a "minimal" participant in a criminal activity for the purpose of entitling the defendant to a downward adjustment in sentencing as follows:

> 1. Subsection (a) applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.
>
> 2. It is intended that the downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for

5

> example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.

Guidelines § 3B1.2, Commentary, Application Notes 1, 2.  Mendez submits that his role of being only a one-time driver and of a small portion of the total amount of merchandise warrants him being granted a four level downward departure.

In the case of *United States v. DeMasi*, 40 F.3d 1306 (1st Cir. 1994) the court held that a defendant's participation in attempted robbery fell between minor and minimal role, warranting three-level reduction in his base offense, where defendant attended only one of numerous surveillance meetings, and he served only as lookout for attempted robbery. *See also United States v. Westerman*, 973 F.2d 1422 (8th Cir. 1992), wherein the appellate court reversed the district court's refusal to grant a downward departure for defendant who drove coconspirators to house they tried to burn as part of mail fraud scheme.

### 3. Offense level Extraordinarily Magnified

Herein, Mendez's base offense level was 4 and it was increased by a factor of 10 levels by the stipulated amount of lost ($305,916.00).  Mendez argues that his offense level has been extraordinarily magnified and bears no relation to his role in the offense - the Canon Toner Cartridge Theft. If all other factors in the calculation of his total offense level were to remain the same, the increase of 10 levels has the dramatic difference of resulting in a total offense level of 13 instead of 3, therefore increasing his exposure from a range of 0-3 months incarceration to a range of 12-18 months incarceration. Mendez argues that his offense level should be appropriately departed downward to accurately reflect his role in the charged offense.

6

In the case of *U.S. v. Restrepo*, 936 F.2d 661 (2nd Cir. 1991), the court concluded that the sentencing judge did not err when it, over the objection of the government, departed downward four levels on the ground that the defendants' minimal involvement in the offense was not adequately accounted for in the Sentencing Guidelines. In *Restrepo*, the base offense level for several defendant's was increased 9 levels for the stipulated amount of funds involved in money laundering. The *Restrepo* court noted that "[t]he district court has discretion to sentence below the range specified by the guidelines if it determines 'that there exists a[ ] ... mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a [lower] sentence.' 18 U.S.C. § 3553(b) (1988); see U.S.S.G. § 5K2.0, p.s."

In upholding the sentencing court's finding that there was no connection between the value of the funds involved in the offense and the defendants' conduct in the offense, the *Restrepo* court recognized the sentencing judge's downward departure in the circumstances of that case to be "simply a recognition that when an aggravating factor is translated to a sliding scale of offense levels, the assumptions underlying that translation cannot fairly reflect every possible case. Cf. U.S.S.G. § 2F1.1, comment. (n.10) (increasing the offense level for crimes of fraud based upon monetary loss may require downward departure if the seriousness of the offense is thus overstated)." *Id.* at 667. *See also United States v. Stuart*, 22 F.3d 71, 82 (3rd Cir. 1994)(On remand for determination of whether defendant was minor participant in scheme involving selling of stolen government bonds, if defendant requested downward departure, district court had discretion to depart from Sentencing Guidelines to extent it found that nine level loss table enhancement overstated defendant's criminality and need for punishment, where, at most, defendant agreed to deliver stolen

7

bonds on two occasions, for total payment of $2,000, and nine level enhancement imposed represented full $129,000 face value of bonds recovered).

For all of the above reasons this court should disallow the enhancement of two levels for more than minimum planning as computed in the PSI (#46) grant a 4 level downward departure for Mendez minimum participation to the offense which he pled and a downward departure for the increased enhancement of 10 levels by the amount of loss.

                Respectfully submitted,

                JORGE E. ALONSO, ESQ.
                Attorney for Jose A. Mendez
                800 Douglas Road, #219
                Coral Gables, Florida 33134
                (305) 445-1177

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this __13__ day of JUNE, 2001, to Don Chase, AUSA, 500 E. Broward Blvd., Suite 700, Ft. Lauderdale, Florida 33301.

BY: _____
      JORGE E. ALONSO, ESQ.

8